IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RICHARD N. ABRAMS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2433-N |
| | § | ECF |
| **OFFICE OF THE COMPTROLLER OF THE CURRENCY,** | § | |
| | § | |
| Defendant. | § | |

## CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Order of Reference, entered December 21, 2005, this case has been referred to the United States Magistrate Judge for findings and recommendation. Plaintiff Richard N. Abrams ("Plaintiff") filed a complaint pursuant to the Freedom of Information Act, 5 U.S.C.A. § 552 ("FOIA"), on December 12, 2005. Defendant Office of the Comptroller of Currency ("the OCC") filed a motion for summary judgment on January 11, 2006. Plaintiff filed a response on January 31, 2006, and the OCC filed a reply on February 15, 2006. Pursuant to the Court's order, entered March 9, 2006, the OCC submitted the Order of Investigation, which is the document at issue in this case, for *in camera* review on March 15, 2006. Having reviewed the Order of Investigation and the pleadings in this case, the Court recommends that the District Court **GRANT** the OCC's motion for summary judgment for the reasons stated below.

## BACKGROUND

The OCC is the bureau of the Department of Treasury which has the responsibility of supervising banks organized under the National Bank Act. 12 U.S.C.A. §§ 481-485; *First Nat'l Bank v. Smith*, 610 F.2d 1258, 1264 (5th Cir. 1980). Pursuant to this statutory grant of authority

over national banks, the OCC has the power to conduct examinations of national banks and to prepare reports containing the results of the examinations. 12 U.S.C.A. § 481. The OCC may institute administrative enforcement actions against any national banking institution or parties affiliated with any national banking institution if, during the course of an examination, the OCC discovers unsafe or unsound banking practices, violations of law, or breaches of fiduciary duties.

Surety Bank, N.A. ("Surety Bank"), located in Fort Worth, Texas, was a national banking association, until Surety Bank converted to a state-chartered bank on June 1, 2005. (*Def.'s App.* at 1.) In January 2005, the OCC conducted a regularly scheduled examination of Surety Bank. (*Id.* at 2.) The examination of Surety Bank revealed that Surety Bank had not been charging certain bank accounts the normal transaction fee for executing wire transfers, and the involved bank accounts were "related to" Plaintiff. (*Id.*) The examination also revealed "other conduct" that the OCC believed may have constituted unsafe or unsound banking practices, violations of law, or breaches of fiduciary duty by Plaintiff. (*Id.*)

On April 19, 2005, the OCC sent Plaintiff a letter notifying Plaintiff that the OCC was considering initiating an administrative enforcement action against him and requested that he provide the OCC further information about the related wire transactions and other involved transactions. (*Id.*; *Pl.'s Resp.* at 1.) In a letter dated May 5, 2005, Plaintiff responded to the OCC's letter and declined to provide the OCC with any further information. (*Def.'s App.* at 3; *Pl.'s Resp.* at 2.)

On June 9, 2005, the OCC issued an Order of Investigation, notifying Plaintiff of the OCC's intention to conduct a formal investigation. (*Def.'s App.* at 3; *Pl.'s Resp.* at 3.) Between July 2005 and November 2005, the OCC issued at least six administrative subpoenas *duces tecum* and *ad*

*testificandum* upon Plaintiff, Surety Bank, and other former employees of Surety Bank. (*Pl.'s Resp.* at 4.)

Plaintiff initiated this lawsuit on December 12, 2005, seeking a copy of the Order of Investigation pursuant to the FOIA. In Plaintiff's complaint, he states that he requested a copy of the Order of Investigation on July 27, 2005, and that the OCC denied his request, claiming that the Order of Investigation is confidential. (*Pl.'s Compl.* at 3.) On August 2, 2005, Plaintiff filed a formal request for a copy of the Order of Investigation pursuant to the FOIA. (*Id.* at 4.) The OCC denied Plaintiff's request, stating that the Order of Investigation is exempt from production pursuant to 5 U.S.C.A. §§ 552(b)(5), (7), and (8). (*Id.*) Plaintiff formally appealed the OCC's denial on August 25, 2005. (*Id.*) On November 18, 2005, the OCC denied Plaintiff's appeal on the basis that the Order of Investigation is exempt from production pursuant to 5 U.S.C.A. § 552(b)(8). (*Id.*)

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "material fact" is one that "might affect" the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). A "genuine" issue is "real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489. Accordingly, a genuine issue of material fact is present if the jury could potentially find for the non-moving party. *Liberty Lobby*, 477 U.S. at 248; *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

3

Once a party has made a proper motion for summary judgment, the court reviews the record as a whole in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

## DISCUSSION

The OCC argues that the Court should grant its motion for summary judgment because the Order of Investigation falls within the exemption outlined in 5 U.S.C.A. § 552(b)(8) of the FOIA ("Exemption 8"). The FOIA requires government agencies to disclose documents, unless the government agency can demonstrate that the document at issue falls within the scope of one the nine exemptions enumerated in § 552(b) of the FOIA. *See, e.g., Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004). "The FOIA reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *United States Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994). Exemption 8 provides that the FOIA does not apply to matters that are "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C.A. § 552(b)(8).

The OCC argues that Exemption 8 applies to the Order of Investigation because the Order of Investigation "is a document that is related to the March 2005 examination report prepared by the OCC in connection with its supervision of Surety Bank." (*Def.'s Mot.* at 7; *Def.'s App.* at 3.) The OCC states that the examination of Surety Bank in January 2005 revealed the following:

4

> [Plaintiff's] personal account and several associated business accounts were not charged the usual per-transaction fee charged to Bank customers for the execution of wire transfers. According to OCC records, at least 1,386 wire transfers were effectuated in the year 2004 through [Plaintiff's] personal and related business accounts at the Bank. Moreover, the OCC determined that by failing to pay the usual $15 per-transaction fee for these wire transfers, [Plaintiff] avoided charges of more than $20,000 due to the Bank.

(*Def.'s App.* at 2.) The OCC argues that the Order of Investigation relates to the above findings of the January 2005 examination and the resulting examination report. (*Id.* at 3.)

Plaintiff states two main reasons why the Court should deny the OCC's motion for summary judgment. First, Plaintiff argues that Exemption 8 does not apply to the Order of Investigation because the Order of Investigation is not "related to" the examination report. (*Pl.'s Resp.* at 10-11.) Plaintiff claims that the OCC has taken actions that do not support the OCC's position that "the [Order of Investigation] was issued for the purpose of essentially extending the [March 2005 examination report]." (*Id.* at 11-12.) Second, Plaintiff alleges that the OCC has waived any claim that the Order of Investigation is confidential because the OCC previously allowed others to view the Order of Investigation. (*Id.* at 13-15.)

### I. Is the Order of Investigation "Related To" the Examination Report?

The Court must narrowly construe FOIA exemptions in favor of full disclosure. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976); *Fed. Labor Relations Auth. v. United States Dep't of Def.*, 975 F.2d 1105, 1111 (5th Cir. 1992), *rev'd on other grounds*, 510 U.S. 487 (1994). When interpreting a statute, the Court is bound by the "plain meaning" of the statute. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989) (stating that "where . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'") (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). "The Court may not look beyond the words of a statute if those words are rational and unambiguous." *In re Hammers*, 988 F.2d 32, 34 (5th Cir. 1993). Fifth Circuit case law interpreting Exemption 8 is sparse, but other federal courts interpreting Exemption

5

8 have applied it according to the plain meaning of its broad terms. *See, e.g., Gregory v. Fed. Deposit Ins. Corp.*, 631 F.2d 896, 898-99 (D.C. Cir. 1980) (per curiam); *Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531, 532, 533 (D.C. Cir. 1978) (holding that Exemption 8 excluded "documents relating to the extent of compliance by certain national banks with the Consumer Credit Protection Act" from disclosure and stating "if Congress has intentionally and unambiguously crafted a particularly broad, all-inclusive definition, it is not our function . . . to subvert that effort").[1]

Based upon the plain meaning of Exemption 8, the Court concludes that the Order of Investigation is a document "related to" an exam report. A representative of the OCC stated in a sworn affidavit that the OCC issued the Order of Investigation as a direct result of matters disclosed in the March 2005 examination report. (*Def.'s App.* at 3.) The OCC's affidavit specifically identifies the matters contained in the examination report that are the subject of the Order of Investigation. (*Id.* at 2.) The letter that the OCC sent to Plaintiff in April 2005 supports the OCC's contention that the Order of Investigation was issued to investigate matters discussed in the examination report. The letter indicated to Plaintiff that the OCC had discovered the following during the examination of Surety Bank: (1) the waiver of an estimated $20,000 in wire transfer fees on Plaintiff's accounts; (2) violations regarding a line of credit in the amount of $105,000; and (3) Plaintiff's role in a plan to temporarily increase deposits at branches of Surety Bank directly prior

---

[1] The OCC cited *Gregory*, 631 F.2d 896, and *Heimann*, 589 F.2d 531, in its briefs, and Plaintiff adamantly disagreed with the OCC's reliance on these cases, claiming that the holdings in these cases are inapplicable to this case. (*See Pl.'s Resp.* at 15-18.) The Court does not rely on the holding in these cases. Rather, the Court views these cases as exemplary of how other courts have applied Exemption 8 in accordance with the plain meaning of its terms. *See also Atkinson v. Fed. Deposit Ins. Corp.*, 1980 U.S. Dist. LEXIS 17793, at *3 (D.D.C. February 13, 1980) (stating that the findings of a bank examination and the "follow-up" of a bank examination are "related to" bank examination reports within the plain meaning of Exemption 8).

to the branches' sale to another national bank. (*Id.* at 2-3.) The letter stated that the OCC was considering commencing an administrative enforcement action against Plaintiff about these matters, and the Order of Investigation marked the beginning of that investigation. (*Id.* at 3.) After conducting an *in camera* review of the Order of Investigation, the Court is satisfied that the OCC issued the Order of Investigation to investigate activities described in the March 2005 examination report. Accordingly, the Court concludes that the Order of Investigation is "related to" the March 2005 examination report.

Plaintiff argues that Exemption 8 does not exclude the Order of Investigation from disclosure because "there must be a direct connection between the information in the bank examination report and the information in the agency record in question." (*Pl.'s Resp.* at 11.) The plain meaning of the language of Exemption 8 does not support Plaintiff's argument, nor does Plaintiff cite any supporting case law. Exemption 8 only requires that the document at issue be "related to" a bank report, rather than that a "direct connection" exists between the information in the two documents. Plaintiff's argument seems to urge the Court to adopt a rule that the document at issue must contain the same information or language as a bank report, but the Court declines to adopt this test. The Court will not carve out exceptions to the broad language of the exemption because Plaintiff has not argued that any grounds exist for the Court to look beyond the plain meaning of the statute. In some instances, courts will look beyond the plain meaning of a statute, such as when the statutory language is ambiguous, "there is an assertion of a significant change in circumstances since enactment," or when "a literal reading leads to unreasonable results." *United States v. Am. Trucking Ass'ns.*, 310 U.S. 534, 543 (1940); *Heimann*, 589 F.2d at 534 (citing *Perry v. Commerce Loan Co.*, 383 U.S. 392, 397-400 (1996)). Plaintiff, however, has not asserted that any of these circumstances is present. Instead, Plaintiff baselessly argues that the Court should interpret Exemption 8 more

7

restrictively than it is written. The Court rejects Plaintiff's argument and concludes that the plain language of Exemption 8 excludes the Order of Investigation from disclosure.

Plaintiff also argues that the OCC's actions contradict the OCC's assertion that the Order of Investigation is related to the examination report. (*Pl.'s Resp.* at 11-12.) Plaintiff states that in November 2005 the OCC issued subpoenas in accordance with the requirements outlined in the Right to Financial Privacy Act, 12 U.S.C.A. §§ 3401-3422 ("RFPA"). (*Id.* at 12.) Plaintiff states that the RFPA specifically exempts supervisory agencies from complying with its requirements if the bank customer information provided by the financial institution is obtained by the agency "in the exercise of its supervisory, regulatory, or monetary functions." (*Pl.'s Resp.* at 12 (citing 12 U.S.C.A. § 3413(b).) Plaintiff argues that if the Order of Investigation was truly related to the examination report then the OCC would not have utilized the RFPA. (*Id.*) Plaintiff then asserts that the true purpose of the Order of Investigation was to follow through on the threatened administrative enforcement action and that the investigation did not have a proper purpose. (*Id.* at 11, n.14)

The Court finds that Plaintiff's argument does not affect the determination of whether the Order of Investigation is related to the examination report. The relationship between the Order of Investigation and the examination report is documented by the OCC's correspondence with Plaintiff, and the examination report itself, which includes the findings of the examination related to Plaintiff. Speculation by Plaintiff that the OCC unnecessarily utilized the RFPA does not negate that relationship, nor do Plaintiff's allegations that the OCC initiated the investigation for an improper purpose.

### II. Did the OCC Waive the Confidentiality of the Order of Investigation?

Plaintiff next argues that, even if the Court finds that the Order of Investigation is confidential, the OCC waived that confidentiality by disclosing the Order of Investigation to

multiple people. (*Pl.'s Resp.* at 13-15.) When the OCC issued and served administrative subpoenas, the subpoenas included information also contained within the Order of Investigation. Plaintiff argues that, by including this information in the subpoenas, the OCC did not maintain the confidentiality of the Order of Investigation. (*Id.*) The OCC responds that its regulations require it to disclose the Order of Investigation to any person from whom the OCC is seeking testimony or evidence, but that this disclosure is limited and does not make the Order of Investigation public. (*Def.'s Reply* at 6.)

The United States Court of Appeals for the Fifth Circuit has yet to address waiver of Exemption 8, but the Fifth Circuit has addressed waiver in the context of other FOIA exemptions. For example, in *Shermco Industries, Inc. v. Secretary of the Air Force*, 613 F.2d 1314 (5th Cir. 1980), the Fifth Circuit addressed whether a government agency had waived the protection of Exemption 5 of the FOIA. *Id.* at 1320. The court ultimately held that the agency had not waived the application of Exemption 5 by disclosing the information at issue in an inter-agency memoranda because Exemption 5 expressly applied to inter-agency memoranda. *Id.* In reaching this conclusion, the court stated that "[w]aiver occurs when an agency makes its information more broadcast than is allowed by its own regulations." *Id.* (citing *Cooper v. Dep't of Navy*, 594 F.2d 484 (5th Cir. 1979)). In accordance with this definition of waiver, the OCC has not waived the application of Exemption 8 in this case because the OCC has not broadcast the Order of Investigation beyond what its own regulations permit. The OCC's regulations allow the OCC to make a limited publication of the Order of Investigation but still maintains the Order of Investigation's confidentiality. *See* 12 C.F.R. § 19.183(a) (stating that "[a]ny person who is compelled or requested to furnish testimony, documentary evidence, or other information with respect to any matter under formal investigation shall, on request, be shown the order initiating the investigation"); 12 C.F.R. § 4.32(b) (outlining

OCC documents that are confidential). The Court, therefore, concludes that the OCC has not waived the application of Exemption 8 by disclosing the Order of Investigation when issuing subpoenas.

Even under other circuits' waiver doctrines, the Court concludes that the OCC has not waived the application of Exemption 8. The United States Court of Appeals for the D.C. Circuit has held that "an agency may waive its claim that information is exempt from disclosure if a FOIA plaintiff carries 'his burden of pointing to specific information in the public domain that appears to duplicate what is being withheld.'" *Assassination Archives & Research Ctr. v. Cent. Intelligence Agency*, 334 F.3d 55, 60 (D.C. Cir. 2003) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Under this definition of waiver, the Court concludes that Plaintiff has not illustrated that the OCC made the Order of Investigation available within the "public domain" because the OCC only revealed the Order of Investigation to a limited number of people, those served with subpoenas, for the limited purpose of demonstrating the OCC's authority for issuing subpoenas.

## **CONCLUSION**

After conducting an *in camera* review of the Order of Investigation, the Court concludes that the Order of Investigation is "related to" the examination report within the meaning of Exemption 8. The Court also concludes that the OCC has not waived the application of Exemption 8 by disclosing the Order of Investigation when serving subpoenas. Accordingly, the Court concludes that the Order of Investigation is exempt from disclosure under the FOIA.

## **RECOMMENDATION**

The Court recommends that the District Court **GRANT** the OCC's motion for summary judgment and dismiss Plaintiff's case with prejudice.

Signed this 2nd day of May, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE